IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

E.I. DUPONT DE NEMOURS AND          :
COMPANY,                            :
                                    :
          Plaintiff,                :
                                    :
     v.                             : Civil Action No. 04-1452 JJF
                                    :
GREAT LAKES CHEMICAL CORPORATION,   :
                                    :
          Defendant.                :

---

Richard L. Horowitz, Esquire and David E. Moore, Esquire of
POTTER ANDERSON & CORROON LLP, Wilmington, Delaware.
Of Counsel: Bruce D. DeRenzi, Esquire and John T. Gallagher,
Esquire of MORGAN & FINNEGAN, LLP, New York, New York.
Attorneys for Plaintiff.

Frederick L. Cottrell, III, Esquire and Alyssa M. Schwartz,
Esquire of RICHARDS LAYTON & FINGER, Wilmington, Delaware.
Of Counsel: Richard D. Harris, Esquire, Brad R. Bertoglio,
Esquire, and Jordan Herzog, Esquire of GREENBERG TRAURIG LLP,
Chicago, Illinois.
Attorneys for Defendant.

---

**MEMORANDUM OPINION**

August 22, 2005
Wilmington, Delaware

FARNAN, District Judge.

Pending before the Court is the Motion To Dismiss Dupont's
Amended Complaint Or, In The Alternative, To Stay Any Remaining
Counts, Pending The Contractually Required Completion Of
Mediation (D.I. 10) filed by Defendant Great Lakes Chemical
Corporation ("Great Lakes").  For the reasons discussed, the
motion will be granted in part and denied in part.

## BACKGROUND

Both Plaintiff E.I. DuPont de Nemours and Company ("Dupont")
and Great Lakes filed patent applications with the U.S. Patent
and Trademark Office seeking to patent methods of extinguishing
fires using a chemical compound known as HFC-227.  The parties
subsequently decided to enter into a cross-license agreement
relating to the manufacture and use of HFC-227.  On June 24,
1994, the parties entered into a license agreement ("the 1994
Agreement"), wherein DuPont agreed to grant Great Lakes an
exclusive license to Dupont's U.S. Patent No. 5,084,190 ("the
'190 patent"), while Dupont reserved a right to manufacture, use,
or sell HFC-227 pursuant to the '190 patent in the Unites States.
In return, Great Lakes agreed to grant DuPont a nonexclusive
license in the United States pursuant to Great Lakes' U.S. Patent
No. 5,124,053 ("the '053 patent").  Great Lakes also agreed to
pay Dupont a royalty comprising a percentage of the difference

1

between the selling price of Great Lakes' HFC-227 product and the price paid to DuPont for the purchase of raw materials to manufacture it.

On May 8, 2002, the parties signed a modified version of the 1994 Agreement ("the 2002 Agreement"), wherein the license grant from DuPont to Great Lakes was changed to a nonexclusive license, and the license grant from Great Lakes to DuPont was expanded in scope to a worldwide license.  The 2002 Agreement also contained a reciprocal "anti-strikeback" provision prohibiting the parties from asserting patents against each other.  Further, the 2002 Agreement contained mechanisms for the resolution of disputes under the Agreement.

In mid-November 2004, DuPont filed this lawsuit alleging that Great Lakes infringes U.S. Patent No. 6,376,727 ("the '727 patent").  The '727 patent is directed to an azeotropic mixture of HFC-227 and hydrogen fluoride, which DuPont alleges is necessarily produced by the process Great Lakes uses to manufacture HFC-227.  In response, on December 8, 2004, Great Lakes sent DuPont a seven-page letter in which Great Lakes gave Dupont formal notification of Dupont's breach of both the 1994 and 2002 Agreements.  In Great Lakes' view, DuPont breached Article II(B)(2) of the 1994 and 2002 Agreements, which prohibits DuPont from assert any of its patents to prevent Great Lakes from

manufacturing, using,or selling the HFC-227 product.  Sixty-one
days later, on February 7, 2005, DuPont filed an Amended
Complaint, adding two additional counts.  Count II seeks a
declaratory judgment that Dupont does not infringe Great Lakes'
'053 patent.  Count III is for breach of contract due to Great
Lakes' alleged termination of DuPont's rights under the 1994 and
2002 Agreements.

On March 1, 2005, Great Lakes filed its Motion To Dismiss
Dupont's Amended Complaint, Or In The Alternative, To Stay Any
Remaining Counts, Pending The Contractually Required Completion
of Mediation (D.I. 10).  By its Motion, Great Lakes moves the
Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and
12(b)(6), to dismiss each count of DuPont's Amended Complaint for
lack of subject matter jurisdiction and for failure to state a
claim upon which relief can be granted.  In the alternative,
Great Lakes moves the Court, pursuant to the Federal Arbitration
Act and the express contractual terms of the 2002 Agreement, to
stay the lawsuit pending the completion of negotiation and
mediation as to all counts not so dismissed.

## STANDARDS OF LAW

## I.   Dismissal Pursuant To Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges the
jurisdiction of the court to address the merits of the

plaintiff's complaint. The motion should be granted where the asserted claim is "insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." Coxson v. Comm. of Pennsylvania, 935 F.Supp. 624, 626 (W.D. Pa. 1996) (citations omitted). Additionally, a motion to dismiss under 12(b)(1) may present either a facial or factual challenge to subject matter jurisdiction. See Mortensen v. First Fed. Sav. and Loan, 549 F.2d 884, 891 (3d Cir. 1977).

## II. Dismissal Pursuant To Rule 12(b)(6)

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Strum v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987). In reviewing a motion to dismiss for failure to state a claim, "all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party." Strum, 835 F.2d at 1011; see also Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the

4

allegations.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984);

Jordan, 20 F.3d at 1261.

## DISCUSSION

### I.   Whether The Court Should Dismiss Count III, Breach Of Contract Pursuant to Rule 12(b)(6)

Great Lakes contends that Count III of the Amended

Complaint, breach of contract, should be dismissed pursuant to

Rule 12(b)(6) for three reasons.  First, Great Lakes contends

that it has not terminated DuPont's rights under the 2002

Agreement by sending its letter of December 8, 2004.[1]  Second,

Great Lakes contends that DuPont's allegations contradict one

another.  Specifically, Great Lakes contends that it is

inconsistent for DuPont to assert that Dupont did not breach the

---

[1] In pertinent part, Article VII(b) of the 2002 Agreement
states:

> Termination for Breach.  In the event that any
> provision of this Agreement is breached by either Party
> (Breaching Party), the Non-breaching party may give
> written notice of its intention to terminate this
> Agreement ("the Notice") to the Breaching Party,
> setting forth in detail the breach and the steps
> required to correct the breach.  If such breach is
> corrected within the sixty (60) day period following
> receipt of the notice, the rights granted and
> obligations assumed herein shall continue in force.  If
> such breach is not corrected within the sixty (60) day
> period following receipt of the Notice, all rights in
> the Agreement of the Breaching Party will be terminated
> as of the last day of said sixty (60) day period.

(D.I. 11, Ex. B at 8.)  The Agreement goes on to specify the
consequences of termination of the Agreement.

Agreements, yet assert that DuPont's rights under the agreement
have been terminated.  Third, Great Lakes contends that DuPont's
claim for breach of contract is premature because Great Lakes'
accusation of breach in the December 8 letter does not, in and of
itself, constitute a breach by Great Lakes.

In response, DuPont contends that it properly pleaded its
breach of contract cause of action because DuPont alleges (1) the
existence of the 2002 Agreement; (2) the facts underlying Great
Lakes' claim of breach of and intent to terminate that Agreement,
which resulted in the termination fo DuPont's rights; and (3)
resulting damages and right to injunctive relief.

Applying the standard for dismissal pursuant to Rule
12(b)(6) to the Amended Complaint, the Court concludes that if
DuPont were to prove all of its allegations, it may be able to
prevail on its breach of contract claim.  Thus, the Court will
deny Great Lakes' motion with regard to dismissing Count III of
the Amended Complaint.

## II.  Whether The Court Should Dismiss Count II, Declaratory Judgment, Pursuant To Rule 12(b)(1)

Great Lakes contends that Count II, declaratory judgment,
should be dismissed for two reasons.  First, Great Lakes contends
that Count II should be dismissed pursuant to Rule 12(b)(1) for
lack of subject matter jurisdiction because no actual,

6

justiciable controversy exists between the parties.  Second,
Great Lakes contends that Count II should be dismissed pursuant
to Rule 12(b)(6) because it fails to state a claim upon which
relief can be granted.

A.   Whether Count II Should Be Dismissed Pursuant to Rule
     12(b)(1) for Lack of Subject Matter Jurisdiction

     The Court concludes that the instant case presents a factual
challenge because Great Lakes disputes the existence of the
jurisdictional facts alleged in the Complaint.  When a court
considers a factual challenge to jurisdiction, it does not
presume the truth of plaintiff's allegations.  Mortensen v. First
Federal Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).
Further, the existence of disputed material facts will not
preclude the court from evaluating for itself the merits of
jurisdictional claims.  Id.  Moreover, the plaintiff has the
burden of proof that jurisdiction does in fact exist.  Id.

     Great Lakes contends that DuPont has no reasonable
apprehension of suit, as the 1994 and 2002 Agreements comprise an
implied covenant not to sue.  Specifically, Great Lakes contends
that because Great Lakes has not terminated the 1994 and 2002
Agreements and DuPont denies that DuPont has breached the
Agreements, the 1994 and 2002 Agreements remain an implied
covenant not to sue.  Further, Great Lakes contends that it has
never made any explicit threat of suit and that, even if DuPont

7

lost its rights to the '053 patent, the absence of a patent license is not sufficient to establish in DuPont a reasonable apprehension of suit.

In response, Dupont contends that, by asserting that DuPont's filing of the Complaint constituted a breach of the 2002 Agreement and indicating its intent to terminate DuPont's rights under the Agreement, Great Lakes caused DuPont's loss of rights to the '053 patent.  Further, DuPont contends that a reasonable apprehension of suit arose because DuPont did not change its activity concerning HFC-227 upon termination of its rights under the Agreement.

The Declaratory Judgment Act, 28 U.S.C. § 2201(a), "requires an actual controversy between the parties before a federal court may exercise jurisdiction over an action for a declaratory judgment." EMC Corp. v. Norand Corp., 89 F.3d 807, 810 (Fed. Cir. 1996).  The inquiry as to whether there exists an actual controversy focuses on the conduct of both the patentee and the potential infringer. Gen-Probe, Inc. v. Vysis, Inc., 359 F.3d 1376, 1380 (Fed.Cir.2004).  There must be both (1) an explicit threat or other action by the patentee which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit; and (2) present activity by the declaratory judgment plaintiff which could constitute

8

infringement, or concrete steps taken with the intent to conduct
such activity.  Id.; Amana Refrigeration, Inc. v. Quadlux, Inc.,
172 F.3d 852, 855 (Fed. Cir. 1999); BP Chems. Ltd. v. Union
Carbide Corp., 4 F.3d 975, 978 (Fed. Cir. 1993).

The parties do not dispute that the second prong, present
infringing activity, of the two-part test is satisfied in these
circumstances.  Rather, the motion turns on the first prong,
reasonable apprehension of suit.  "When the defendant's conduct,
including its statements falls short of an express charge, one
must consider the 'totality of the circumstances' in determining
whether that conduct meets the first prong of the test."
Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731,
736 (Fed. Cir. 1988) (quoting Goodyear Tire & Rubber Co. v.
Releasomers, Inc., 824 F.2d 953, 955 (Fed. Cir. 1987)).  DuPont
must be able to demonstrate that it has a reasonable apprehension
of imminent suit.  Steel Co. v. Citizens for a Better Env't, 523
U.S. 83, 101 (1998)(this requirement of imminence reflects the
mandate in Article III of the U.S. Constitution that an injury in
fact be "concrete," and "actual or imminent, not conjectural or
hypothetical.").

The Court concludes that DuPont has not demonstrated a
reasonable apprehension of imminent suit.  At the time DuPont
filed its Amended Complaint, Great Lakes had taken no action

9

other than to send the December 8 letter notifying DuPont that
Great Lakes considered DuPont to be in breach of the contract.
On the sixth page of its December 8 letter, Great Lakes warns
DuPont that unless it dismisses this lawsuit, "Great Lakes will
have no choice but to address DuPont's breach of the cross-
license agreements.  Article VII(b) of the 2002 Agreement
entitles Great Lakes to seek all damages incurred as a result of
DuPont's breaches."  (D.I. 11, Ex. F at 6.)  Great Lakes goes on
to enumerate how it believes it has been harmed by DuPont's
breach, but makes no mention of infringement as a source of its
injury.  (Id.)  Nothing in the December 8 letter leads the Court
to believe that Great Lakes was contemplating asserting the '053
patent against DuPont.  Further, the Court finds that there
exists a question of fact as to whether Great Lakes intended to
terminate the Agreements at the time it sent the December 8
letter.  If Great Lakes did not intend to terminate the
Agreements, Great Lakes would be bound by the Agreements not to
assert the '053 patent against DuPont.  Further, DuPont presents
no evidence that Great Lakes has made any indication of its
intent to enforce the '053 patent against any other party.  In
these circumstances, the Court concludes that a reasonable
apprehension of suit does not exist.  Therefore, no actual
controversy supports jurisdiction under the Declaratory Judgment

Act for DuPont's declaratory judgment claim against Great Lakes
with regard to the '053 patent.  Accordingly, the Court will
dismiss Count II of the Amended Complaint for lack of subject
matter jurisdiction.

## III. Whether The Court Should Dismiss Count I, Patent Infringement, For Failure To State A Claim

Great Lakes contends that, because the subject matter of the
1994 and 2002 Agreements is HFC-227 and patents directed to its
uses and compositions, the "anti-strikeback" provisions in the
Agreements preclude DuPont from asserting the '727 patent against
Great Lakes over any process for manufacturing HFC-227.[2]

In response, DuPont contends that the provisions of the 2002
Agreement do not bar DuPont from Asserting the '727 patent
against Great Lakes.  Specifically, DuPont contends that the
plain language of the 2002 Agreement prohibits DuPont only from
asserting a patent to "prevent" Great Lakes from manufacturing,
using, or selling fire extinguishing compositions comprising HFC-
227 and that the parties expressly agreed that "no license or

---

[2] Article II(b)(2) of the 2002 Agreement states:
So long as Great Lakes is not in default with respect
to any payment by Great Lakes hereunder, DuPont will
not assert: . . . any patent or patent application now
or hereafter controlled (in the sense of having the
right to grant licenses or sublicenses) by DuPont to
prevent Great Lakes or its Customers from inporting,
exporting, manufacturing, using and/or selling Product
as provided by the grant of Article II(a).
(D.I. 11, Ex. B at 3.)

11

right is granted by implication or otherwise" to any DuPont

patent except as specified in the 2002 Agreement.

Applying the standard for dismissal pursuant to Rule

12(b)(6) to the Amended Complaint, the Court concludes that if

DuPont were to prove all of its allegations, it could prevail on

its infringement claim.  Thus, the Court will not dismiss Count I

of the Amended Complaint.

**IV.   Whether the Court Should Stay Or Dismiss This Lawsuit
        Pending Completion Of Mediation**

Great Lakes first contends that because DuPont has failed to

engage in mandatory third party mediation prior to filing this

action, DuPont's claims have been brought prematurely and should

be dismissed pursuant to the ripeness doctrine.  Alternatively,

Great Lakes contends that this action should be stayed, pursuant

to the Federal Arbitration Act, until DuPont first negotiates and

then mediates with Great Lakes with regard to all claims raised

in the Amended Complaint.  Specifically, Great Lakes contends

that the Federal Arbitration Act applies to the alternative

dispute resolution procedure in the 2002 Agreement[3] and that all

---

[3] Article XIV of the 2002 Agreement states:
Dispute Resolution.  In the event of any dispute or
disagreement between the parties concerning the
provisions of this Agreement, the dispute, upon
written request of either party, shall be referred to
the representatives of the parties for decision.
Those representative shall meet in good faith to
resolve the dispute.  If, after thirty (30) days, the

12

claims raised within the Amended Complaint are subject to mediation pursuant to the FAA.

In response, DuPont contends that the unambiguous language of the Article XVI(C) of the Agreement contains two conditions precedent that must be satisfied prior to resolving a dispute by mediation.  First, a written request must be made by either party to have party representatives attempt to resolve the dispute. Second, if after 30 days the representatives are unsuccessful in resolving the dispute, then the matter is submitted to non-binding third party mediation.

After reviewing the pertinent Article of the 2002 Agreement, the Court concludes that in these circumstances, the agreement to mediate was not triggered.  The plain language of Article XVI(C) states that the parties agree they will submit to third party arbitration after 30 days have elapsed without a resolution by representatives of the parties.  However, neither party made a written request to initially refer the dispute to representatives of the parties for decision, as required by the language of the Article.  Accordingly, the Court will deny Great Lakes' motion

─────────────────────

Parties' representatives cannot resolve the dispute, then the parties agree that they will submit to a third party mediation in a mutually acceptable location.  Only upon a failed mediation as determined by either Party will either Party be free to consider court intervention.
(D.I. 11, Ex. B at 10.)

13

with regard to the issues of ripeness.  Further, the Court will
deny Great Lakes' motion with regard to staying this action
pending completion of mediation pursuant to the Federal
Arbitration Act.

## CONCLUSION

For the reasons discussed, the Motion To Dismiss Dupont's
Amended Complaint Or, In The Alternative, To Stay Any Remaining
Counts, Pending The Contractually Required Completion Of
Mediation (D.I. 10) filed by Great Lakes will be granted in part
and denied in part.

An appropriate Order will be entered.

14